Good morning. May it please the court. My name is Michael Wall. I'll be arguing on behalf of the citizen groups that Shell sued in its declaratory judgment actions. I would like to reserve three minutes for rebuttal, if the questioning permits that. Certainly. Shell brought these suits seeking judicial review of agency action. But the agency is not a party to either case. Instead, what Shell did is it brought a case involving parties without any potential liability to each other, including parties who would not otherwise have been in front of the court and claims that would not otherwise have been adjudicated. And it left out the only proper defendant under the Administrative Procedure Act. Well, is the test that the party has to be facing potential liability? Where is that within the actual text of the Declaratory Judgment Act? They're asking for a declaration of rights between parties to potential litigation. Yes, Your Honor, the test is whether there has to be potential liability. There is broad general language in some of the Supreme Court and this Court's jurisprudence. But if you look at how that language has been applied over the past 80 years, no federal court has ever found or allowed a Declaratory Judgment Act action in a case like this where there is no potential liability. It's always a weak start, but go ahead if you want to do it. We haven't ruled yet. So when you tell us what nobody has ever done, you aren't making a lot of headway.  Well, I'll also tell the Court that several federal appellate courts have not allowed what Shell is attempting to do here. That's a good place to start because I think it's your view, as I read your briefs, that the plaintiff always has to have potential liability. And would you tell us about the courts, the cases that you have found that support that view? Yes, Your Honor. There are four circuits, including this one, that have addressed this issue. Let me start with this Court's own jurisprudence. There is a case called Levin Metals v. Parr-Richmond in which Parr-Richmond Terminal – it was a dispute over a contaminated site, and the question was over who was responsible for the cleanup costs. And Parr-Richmond Terminals brought a declaratory judgment action against three defendants, asking for judgment that it had no liability for cleanup of the site. The three defendants were differently postured, and it's very instructive how this Court dealt with it. One of the declaratory judgment defendants was Levin Metals. Levin Metals had incurred cleanup costs and therefore had a claim against Parr-Richmond. The other two defendants had not incurred cleanup costs and therefore had no potential claim against Parr-Richmond, and Parr-Richmond had no liability to those defendants. What this Court said is, of the declaratory judgment defendants, Levin Metals has a potential claim against Parr-Richmond, and therefore Parr-Richmond can bring a declaratory judgment action against Levin Metals. But as to the other defendants who Parr-Richmond had named in its complaint, the District Court would have to consider on remand whether they could be joined as indispensable parties under Rule 19 or Rule 20. And that analysis, that indispensable party analysis, would not have been necessary if those defendants who had no potential claim against Parr-Richmond could have been joined as declaratory judgment defendants in the first place. The Federal Circuit has reached a very similar conclusion in a series of what we call customer cases, the most recent of which is Data-Turn, which we called to the Court's attention in a recent Rule 28-J letter. Those cases basically say that where you have a manufacturer whose customer is being threatened with suit or being sued by a patent holder, the manufacturer can only sue the patent holder if the manufacturer itself has potential liability, either for direct or contributory infringement, or is the indemnitator of the customer. Where that doesn't exist, where there is no liability, there's no justiciable case in controversy under the Declaratory Judgment Act. Those cases build off of an early Third Circuit decision from, I think, 1948 that reached the same result in the early days of the Declaratory Judgment Act. That decision is called, the Third Circuit decision is Arilac. And then we've already had extensive briefing on Cullen County, which is the Fifth Circuit decision. The party's gone back and forth about whether the fact that the defendant there could intervene, I mean, sorry, the plaintiff there could have intervened in a coercive suit made a difference. I can't imagine why it possibly would be enough to allow a non-federal defendant to step in the shoes of the Department of Justice and try to defend an administrative decision. And that brings us to a fundamental problem. The only basis for jurisdiction here is a potential claim under the Administrative Procedure Act. That's a claim that the citizen groups may have against the United States, but they do not have against Shell, and Shell doesn't have a claim under the Administrative Procedure Act. Shell can intervene, and so under your reading of the law, being an intervener is not enough. That's the adverse legal interest for purposes of the Declaratory Judgment Act. That's correct, Your Honor. This court has a very liberal intervention standard. I don't concede that it's necessarily clear that Shell could intervene. Among other things, to intervene as of right, it would have to demonstrate that the United States does not adequately represent its interests, which poses the interesting problem of why Shell thinks that it can adequately represent the United States' interest in defending an Administrative Procedure Act claim. But putting that aside, you don't need the requirements of justiciability to intervene in the circuit. Other circuits would require that. And when Congress adopted the Administrative Procedure Act in 1946, it spent a lot of time thinking about how to structure judicial review of agency actions. It said that the case has to be brought by an aggrieved party. It has to be resolved on an administrative record that the agency develops. It has to be decided based on the rationales provided by the agency. And the remedy that can be granted in that kind of case is an order vacating the agency's decision and remanding it. Congress did not authorize any private litigation under the Administrative Procedure Act. In the 68 years since that act was adopted, no court has ever allowed private litigation under the Administrative Procedure Act. What Shell is attempting here is a workaround around the structure that Congress very carefully adopted. Each of the features of the Administrative Procedure Act requires the government's participation, and for good reason. If Shell could be defending the government's actions without the federal agency's participation, Shell might make concessions or take positions that the agency wouldn't agree with. Shell doesn't understand from the inside the agency's rationales for its decisions. So what Shell is asking this court to do is to allow a kind of litigation that no court ever in the history of the Administrative Procedure Act or the Declaratory Judgment Act has allowed except the district court here. The district court recognized that in its order certifying the case for interlocutory appeal. It recognized that no court had ever allowed this, and there are cases that have not allowed this kind of litigation. The consequences of allowing what Shell wants here are significant. First of all, it would upend 70 years of administrative law practice and allow adjudication of the validity of agency actions outside the presence of the agency. It would also allow, it would open the doors to an entirely new type of litigation. Now Shell says, look, our circumstances are unique, we had this major investment, we wanted a quick decision. Companies make investment decisions based on agency actions all the time. Shell's theory doesn't just apply when an agency issues a permit to a single company. Shell's theory would also apply when an agency issues a rule of national application for which there may be thousands or tens of thousands of companies that are beneficiaries in which there might have been critics on a draft of the proposal. Those critics might have resorted to the courts sometimes in the past. And under Shell's theory, all of those beneficiaries or any of them could bring an action without the presence of the United States, without the federal agency, against the critics and seek to adjudicate the liability of the United States. Let me ask you this. Could the Bureau have sought a declaratory judgment against your clients, assuming there were a pattern of filing lawsuits challenging the lawfulness of the Bureau's actions? Let me answer that in a general way and then specifically to this case. This court has held in the Mosley decision that in the proper circumstance, the United States may bring a declaratory judgment action to determine the validity of an agency decision. What would distinguish this case from that? Well, in that case, the declaratory judgment defendants had actually already sued the United States over the same claims. I don't want to get bogged down into the allegations of Shell's complaints, but if you read the complaint very carefully, it actually does not allege that at the time Shell sued, any of the citizen groups had actually threatened to sue over these agency actions, or with one very minor exception that I'll mention, that any of them had actually even criticized the final agency actions. The exception is that in the spill plan case, one of the many defendants had, on the day the decision issued, said, well, it could still be taken to court, but not all of them. Now, if you look at what Shell has alleged, what Shell has alleged is that the citizens have exercised their rights to petition the government and speak out in the press in the past. Virtually every statement they attribute to the citizen groups was made before the spill plan or the harassment authorizations was finalized. Many of them were made before those documents were even in draft form. It's true that the citizen groups commented on and criticized drafts of those documents, but this is what the Administrative Rulemaking and Administrative Procedure Act process is about. It's about agencies issue drafts of public comments. The agency responds to those comments and makes appropriate adjustments, hopefully resolving controversies rather than creating them. And under Shell's theory, what we have is if you're a citizen and you wish to comment and you've sometimes resorted to the courts in other cases in the past, though not all, and in fact not most of the opportunities one would have had a chance to do that, if one has sometimes resorted to the court in the past, suddenly one can be dragged into court and forced to defend oneself, even if one would never have brought that case in the first place. That is a deeply chilling effect on public participation and participation in the rulemaking process. Before you run out of time, and I want to make sure that you have some time for rebuttal, do you want to quickly address whether there's a potential mootness issue with regard to the voluntary dismissal? Your Honor, I don't want to spend time on that for this reason. I think the citizen groups would get all the relief they wanted if the court were to rule in their favor in the Spill Plans case. And because some of the defendants in the Spill Plans case never brought an affirmative case and some of the claims that Shell adjudicated in the Spill Plans case were never brought by any of the citizen groups, I think the issues… You're satisfied with focusing on the other case and not on that dismissed case? That's right. And we'd rest on our briefs on the mootness. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Kathleen Sullivan, and I represent the Shell parties in this case. Your Honors, this declaratory judgment action was entirely proper. There was proper… Well, you're asking for something that really hasn't been done before. You're pushing the envelope here, and frankly, I have a bit of a hard time with the argument and the potential consequences that will flow from allowing Shell to bring these sort of actions Let me ask you this. Under the APA, could Shell ever be a potential defendant? No, Your Honor. Shell can't be sued under the APA. And the proper course if the NGOs want to bring suit under the APA is for them to sue the federal agency. But to answer Judge Nelson's question earlier, yes, of course the U.S. could have brought a declaratory judgment action in the face of repeated efforts to litigate against the government's approvals of the Arctic drilling. And that actually proves the point, Your Honor, that a declaratory judgment defendant need not… a declaratory judgment plaintiff need not be potentially liable to the other party in order for there to be adverse legal interests. So just to go back, Your Honor, I don't think we're pushing the envelopes. And let me just give you two simple examples of how this kind of declaratory judgment action should seem familiar, even without liability between the parties. Let's take the case of a contract where the two contracting parties haven't sued each other yet for breach. But a third-party beneficiary wants to bring a declaratory judgment action, saying, excuse me, I'm the third-party beneficiary here. I'm not going to be liable for breach, but I would like a declaration of breach or non-breach so that I know my rights. That's familiar. And there are cases in which third-party beneficiaries have sued. Apple v. Motorola, cited by the NGOs, is an example of one. Can I just interrupt here and just ask you, after reading the very excellent briefs on both sides, my question is, what did you accomplish by this lawsuit? You filed in February of 2012. In July of 2012, the environmental groups came in. But while that action was pending, couldn't those groups... I mean, the drilling cessation is during summer. It's very late. If you look to declaratory judgments filing in February, it's unlikely you're going to get it to judgment. Before the drilling season, while it's open, couldn't the environmental groups have come in at any time and requested an injunction? So I'm asking about what you accomplished by this lawsuit. Your Honor, in the end, because the environmental groups did file the APA action, and because the judge, the district court, in his thoughtful opinion, resolved the APA action, he didn't need to resolve the merits of the declaratory judgment claims. But we did accomplish something important. And, Your Honor, in answer to your question, are we pushing the envelope and opening up the floodgates, the answer is no. This is an extremely narrow set of circumstances in which the intervener... And, Your Honor, it's very important, as you emphasized, that Shell here has legal interests at stake, not just bystander, indirect economic interests at stake. It is the proponent of the plan subject to the agency's approval. It is the leaseholder as to which the plan applies. It is, therefore, entitled to be an intervener as of right, and the NGOs did not oppose Shell's intervention in the APA case. So this is a very narrow circumstance where we're talking about the legal interests of an intervener, number one. Number two, Your Honor, Judge Nelson, as you point out, this is a case in which the time frame matters. The effort here on Shell's part, faced with a barrage of repeated lawsuits, which we document in footnote one of the red brief, tried to get out ahead of the APA action to try to advance the judgment on the merit sooner. It's not Shell's fault, Judge Nelson, that we didn't get a judgment on the merit sooner. The NGOs did everything they could to barrage us with motion practice, dismissal motions, repetitive dismissal motions, and efforts to certify to the circuit. So what we were seeking, and what if you affirm the district court with respect to his declaratory judgment ruling, his denial of the motion to dismiss, what we gain from that is the potential to simply advance a litigation in time where it's a very narrow class of potential plaintiffs, interveners, not everybody who's subject to a federal rule, where there's a very narrow window of time in which temporal advancement of the cause of action to an earlier time matters, and in which, above all, there's been a relentless litigation history. This is not just a case in which we were responding to cameras. But there's no doubt that in Shell's perspective, Shell could be thinking, well, there's potential litigation here. And if litigation occurs, Shell would be adversely affected, and the consequences are potentially as severe as to Shell. But when you're talking about adverse legal interests in looking at the Supreme Court precedent and in looking at cases of Mars Circuit, like the Mosley case, you're talking about cases in which the parties not only suffer the potential consequences, but also have legal interests that are adverse to each other. And so I know that you were saying, well, you don't need potential liability to have adverse legal interests. And my question to you is, is there any authority for the proposition that adverse legal interests can be asked to parties who are not potential defendants? Because if there's potential litigation, the government is the only one who's at risk of being sued by the environmental groups, not Shell. So how do you look at the term adverse legal interest and the reasonable apprehension of litigation that's required for purposes of this case, and where does Shell come into that? Your Honor, let me separate out two different parts of your question. First, as to adverse legal interests. Our point is that adverse legal interests between the declaratory judgment parties may include potential legal liability to one another, but that is not required. In other words, there's more ways in which there can be legally adverse interests between the declaratory judgment parties than being liable to one another. I gave you one example already. Third-party beneficiary to a contract has a declaratory judgment right to ask whether the contract should be enforced for its benefit, even though it isn't going to be liable to the party. Second example, patent declaratory judgment suits can be brought by a manufacturer or a supplier against the patent holder to declare a patent, say, invalid or not infringed, even though the patent action would be brought by the patentee only against the customer, based on either a duty to indemnify or potential induced infringement liability. Now there, the indemnity obligation by the declaratory judgment manufacturer plaintiff is a contract obligation. There may never be a lawsuit about indemnification, but the manufacturer is legally adverse to the extent they may be contractually liable to indemnify. So our position here is that an intervener has a legally cognizable interest that's like that of a third-party beneficiary who wants to find out through a declaratory judgment action whether a contract is valid as between the declaratory judgment defendant and a third-party. Shell, as an intervener, is like the patent declaratory judgment plaintiff, who isn't itself going to be liable but may have to indemnify a third-party against the declaratory judgment defendant. So legally, Your Honor, I think, Judge Wynn, you said at the outset the test is not liability. The test is adverse legal interests. And adverse legal interests here exist because Shell is the real party in interest. It is the proponent. It is the owner of the leaseholds. It is the proponent of the plan being subject to agency approval. And therefore, it is a legally cognizable relationship, not just an economic, indirect interest, a legally cognizable relationship to the two other parties. Could I just ask if, without asserting, the defendants were to prevail, what preclusive effect would the judgment have? If the defendants were to prevail? Yes. Well, so, of course, if we prevail, it's preclusive as to NGO, APA suits on the claims that are raised in the litigation or any that could have been brought. If the defendants prevail, with respect, we think it has no binding effect on the U.S. agency. So I think my colleague's parade of horribles about the bad effects on the U.S. is misplaced. A declaration that declines to say the plan is valid leaves the NGOs perfectly free to bring an APA action against the U.S. They would have to do that. They would, Your Honor, exactly. So there's a – and that's why this is not an advisory opinion. It's not an advisory opinion because, of course, it's preclusive if we win, and it doesn't prevent them from bringing an APA action if we lose. All that happens if we lose is there's a declaration that we are not declaring it invalid. I'm sorry, we're not declaring it valid. What would be, in your view, a succinct, just a succinct statement of this Court's rationale if we would rule as you wish us to do? Your Honor, in the narrow circumstances where an intervener, as of right, in a controversy between the declaratory judgment defendant and a third party, presents a real and imminent apprehension of litigation, a real apprehension of imminent litigation, which we did and the judge reviewed the litigation history here and found it real, that intervener party may bring a declaratory judgment action seeking a declaratory judgment on whether the agency action to approve a plan of which the intervener is a proponent is valid. So I would limit it to interveners and a case of relentless litigation history that gives a real apprehension of litigation. Your Honor, you asked really two questions. There's an adverse legal interest here and there's a strong practical likelihood of litigation. Your Honor, that wasn't very succinct. If I could try it again more briefly. A strong likelihood of litigation between the approving agency and the environmental groups. Exactly, Your Honor. And so Shell comes in, brings a declaratory judgment lawsuit, and the government is not in the picture. Correct, Your Honor. How does that work in practice? The litigation progresses. The government is nowhere in sight. A number of ways, Your Honor. First of all, all of the materials in the administrative record can be obtained by subpoena under Rule 45 or through FOIA requests. Obviously, second, the court can ask the United States to prepare a statement of interest or otherwise cooperate with the investigation. So all of the substantive materials needed to review the adequacy of the administrative record can be recreated in the declaratory judgment action. But those practical case management details really don't go to the question before you, which is, is there subject matter jurisdiction? Yes. And is there a cause of action under the Declaratory Judgment Act? That's all that's at stake here. I'm asking how it actually works because it hasn't been done before. It's never been done. There's the pushing the envelope issue that I started with. Your Honor, we respectfully request that you affirm the judgment insofar as the judge below declined to dismiss our declaratory judgment action. And this will develop over time. And, again, it will develop over time. We can't see how this case management will happen unless you affirm and let us try. But the point here is that this is a narrow set of circumstances that is unlikely to be often repeated. Intervenor, real likelihood of litigation, short time frame, demonstrated litigation history. And as to Norm Pennington, I just want to be clear that that's not a backup argument for the NGOs, although they didn't emphasize it, because nothing about our lawsuit is seeking a declaration with respect to the petitioning activity. In other words, we're not like a case where we're saying, RICO, because you sent a pre-litigation demand letter, as in your SOSA case. This is not a case where somebody goes to the NLRB and says, oh, unfair litigation practice because of your lawsuit. That's the B, E, and K case. This is not a case where somebody seeks contract damages because someone else brought a patent infringement lawsuit, as in Apple v. Motorola. This is a case in which what we're seeking in the declaratory judgment action, a declaration of validity of the agency approval, has nothing to do with the petitioning activity as part of the cause of action. So there's no Norm Pennington bar. So we respectfully submit you should affirm here, you should know that the district court's discretion over declaratory judgments is a fallback against the proliferation of these lawsuits. You can see from the fact that the agencies was sued in this case, just as Shell predicted, that our apprehension of litigation here was real and imminent. And with respect, we suggest that the practical problems are not really before you, because all that is before you is the denial of the motion to dismiss for lack of jurisdiction or lack of a cause of action. And on 12b-1 and 12b-6, Shell should prevail. And how it would work, Your Honor, is subpoena, FOIA requests, government statements of interest, and the district court can work it out as he goes. Obviously, the NGOs can narrow the discussion in the declaratory judgment action by saying what the reasons why they think the agency approval is invalid. How do you distinguish the Collin case? Your Honor, very simply that the county in the Collin case was not a real party in interest to the litigation the way Shell is. The county didn't own the property as to which the EIS attached. The county wasn't an intervener. So, in fact, Your Honor, if you look at the Fifth Circuit decision, the Fifth Circuit actually described the county as a stranger to the litigation between the Haven Group and the government. A stranger to the litigation. Shell, by contrast, is the real person in interest in the case, so to speak. It is the proponent of the leasehold. It is the beneficiary of the plan. And, Your Honor, we respectfully request you affirm in the OSRP case. In the IHA case, it seems to have been more or less conceded by my opponent, but we respectfully suggest you should dismiss the appeal because the IHA action, having been voluntarily dismissed under 41A2 in the district court, means that the NGOs got what they wanted in terms of a judgment, and they're not aggrieved. So there's no appellate case or controversy before you. And if you have any doubt about that, you should simply affirm the 41A2 dismissal in the IHA case.  If there are no further questions, thank you, Your Honor. Thank you very much. The Declaratory Judgment Act did not create jurisdiction or create a new cause of action where there is no underlying cause of action. What it did is addressed a problem of timing, where a party was fearing liability, it was accruing, they could bring that case sooner to avoid that liability. That is a distinction that lies throughout this court's and the Supreme Court's decisions. Here, Shell's problem is not one of timing. Shell's own conduct in this case demonstrates that the problem wasn't one of timing. The problem is that Shell does not have a cause of action, and the citizen groups don't have any cause of action under which Shell can be held liable. The APA just doesn't allow that kind of a claim between private litigants. And the situations that Shell identified, for example, the third-party beneficiary, the third-party beneficiary has a legal claim. In the customer cases, the manufacturer can only sue if it's liable, if it's subject to a claim. Here, Shell has no claim against the citizen groups. The citizen groups have no claim on which Shell can be held liable. And the absence of a valid claim underscores that there's no justiciable case or controversy. In fact, if the citizen groups were to sue the federal government, Shell would not even be a necessary party to that litigation. So, why didn't Shell wait? It got all the relief it wanted by intervening in the citizen groups' case. Now, it says the citizen groups will rush into court and seek an injunction, but there's absolutely no history of that alleged in their complaint. And for good reason. The citizen groups don't benefit by waiting to the last minute and seeking a preliminary injunction, because it's far harder to get a preliminary injunction than it is to... It makes it pretty clear why Shell didn't wait, don't you think so? No, I don't, Your Honor, with all due respect. There is no history of the citizen groups seeking preliminary relief against Shell. And in fact, Shell brought this case and then set back and went ahead with its drilling plans. It was not deterred. Well, it's certainly not alleged in the complaint that the citizen groups were likely to seek a preliminary injunction. And I don't think, based on the litigation history here, Shell could have alleged that. The Norr-Pennington Doctrine, very quickly. If there's any doubt about this, the Norr-Pennington Doctrine should be used to look at the Declaratory Judgment Act and APA. It's true to avoid burdens. This court has recognized that litigation burden is cognizable under the Norr-Pennington Doctrine, both in Sosa v. Direct TV and in Franchise Reality. Closing sentence, because I see that I'm out of time. Shell has a problem with the method of judicial review that Congress set up in the Administrative Procedure Act. Congress was very careful about how it decided to allow that, and it did not allow private causes of action. Shell should take its concern with that structure to Congress. Instead, it's asking this court to make an end run around the Administrative Procedure Act, for which there's no precedent, and which the available precedent says Shell cannot do. This court should therefore reverse. Thank you very much, Counsel. All right, we thank the parties for your argument in this interesting case, and that matter is submitted for decision. Calling the next case on the court's calendar is Alaska Wilderness League v. Jewel, with Shell as the intervenors, 13-35866. Thank you. All right, we'll give you a few minutes to set up. Whenever you're ready, Counsel, approach the lectern.
judges: FARRIS, NELSON, NGUYEN